Dean E. McKAY, Appellant (Plaintiff below),

v.

The EQUITABLE LIFE ASSURANCE SO-
CIETY OF the UNITED STATES,
Appellee (Defendant below).

No. 3548.

Supreme Court of Wyoming.

Dec. 16, 1966.

Bruce P. Badley, Sheridan, for appellant.

Houston G. Williams, of Wehrli & Williams, Casper, for respondent.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff, as an employee of Black Hills Power and Light Company, was an insured under a group policy issued to his employer by the defendant. The policy included a provision for major medical expense benefits for employees and their dependents whereby defendant agreed to pay certain charges incurred for hospitalization and medical expenses as a result of a "non-occupational accidental bodily injury or a non-occupational sickness" in an amount "in excess of the deductible amount defined in paragraph B below." Paragraph B—the focal point of dispute—provided as follows:

"B. DEDUCTIBLE AMOUNT. The deductible amount shall be equal to the sum of

"1. a cash deductible of $100, and

"2. the total amount of benefits provided (including the value of benefits provided on a service basis) with respect to such covered charges under the Group policy and any other group plan or plans toward the cost of which any employer makes contributions or payroll deductions or any labor union makes contributions."

During the time the policy was in force plaintiff was stricken with a heart attack and incurred "covered charges" under the policy in the sum of $2,665. Of this amount, $1,459 was paid under a group-plan insurance to which plaintiff's wife belonged, commonly known as Blue Cross-Blue Shield, for which her employer—not plaintiff's employer—had made payroll deductions. Plaintiff, nevertheless, made claim against the defendant for the full amount of the "covered charges." Defendant refused to pay the full amount claimed, insisting that under the terms of its policy the charges paid by the wife's insurer were deductible and defendant was liable only in part for the excess. In keeping with its position, defendant paid the sum of $828 and tendered to plaintiff an additional amount of $222 which it claimed fully discharged its obligation. The tender was refused, plaintiff contending that defendant was not entitled to take the deduction, and this action followed. In due time plaintiff moved for summary judgment and thereupon the trial court, after a determination

that there was no genuine issue as to any material fact, entered judgment for the defendant. From that judgment plaintiff has appealed.

It is plaintiff's position that the printed words "any employer" contained in the deduction clause of defendant's policy set forth above create an ambiguity, which according to well-recognized rules of construction applicable to insurance contracts establish fundamental error in the proceedings below. He relies primarily upon a general principle recognized by this court in Wilson v. Hawkeye Casualty Co., 67 Wyo. 141, 215 P.2d 867, that where such contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted; and this in essence is the premise of plaintiff's argument inasmuch as it is suggested that the words "any employer" may be taken to mean what defendant here says they mean, and that is any employer of plaintiff and his dependents, or as any employer of the plaintiff alone. Furthermore, says plaintiff, the latter is the most reasonable interpretation. The rule, that the language of the policy is to be tested by what a reasonable insured would understand the meaning of the language employed to be, is also advanced.

It is true that in the Wilson case we took cognizance of the foregoing general principles of construction often stated and applied in controversies involving policies of insurance. However, we also took cognizance of other equally applicable general principles and have before and since added to that body of the law. Thus, in essence and in addition to the tenets advanced by plaintiff, we have said—except where otherwise indicated—that the parties have the right to employ whatever lawful terms they wish and courts will not rewrite them. Alm v. Hartford Fire Insurance Company, Wyo., 369 P.2d 216, 217. In other words, the terms must not conflict with pertinent statutes or public policy. Such contracts should not be so strictly construed as to thwart the general object of the insurance. Miles v. Continental Casualty Company, Wyo., 386 P.2d 720, 722. To this should be added the concept that the words used will be given their common and ordinary meaning. 13 Appleman, Insurance Law and Practice, § 7402 (1943). The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended. Wilson v. Hawkeye Casualty Co., supra, 215 P.2d at 873–875. Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms. Addison v. Aetna Life Insurance Company, Wyo., 358 P.2d 948, 950. Neither will the language be "tortured" in order to create an ambiguity. Malanga v. Royal Indemnity Company, 4 Ariz.App. 150, 418 P.2d 396, 399; 13 Appleman, Insurance Law and Practice, § 7384 (1943).

We turn first to the general object of the particular coverage involved. The purpose of provisions such as we are considering, as related to this case, is to indemnify an insured for losses resulting from sickness. Anderson v. Group Hospitalization, Inc., D.C.App., 203 A.2d 421; Laurie v. Holland America Insurance Company, 31 Ill. App.2d 437, 176 N.E.2d 678, 682; Washington Nat. Ins. Co. v. Fincher, Tex.Civ.App., 157 S.W.2d 164. Although the language may vary, it is not uncommon to find provisions in such policies limiting or excluding coverage where the loss incurred is payable from some source other than resources of the insured, and generally speaking those provisions are enforced by the courts. Annotation 81 A.L.R.2d 936, 937.

Thus, the sole question before us is whether or not the language employed by the defendant in limitation of "covered charges" is sufficient to permit the defendant to deduct from those charges the amounts paid by the insurer of plaintiff's

wife. We think it is. We fail to discover therein the unclearness and ambiguity claimed.

Stripped of nonessential language, the provision says in substance that there is to be deducted from the "covered charges" payable the "benefits" provided by "any other group plan * * * toward the cost of which any employer makes * * * payroll deductions." That is followed in paragraph C by the language, "The amount of benefits * * * shall be equal to four-fifths of the excess of the covered charges incurred * * * over the deductible amount." It is to be noted that the word "any" is twice used in the above. The common and ordinary understanding of the word is that it means all or every, Hamilton Fire Insurance Company v. Cervantes, Mo. App., 278 S.W.2d 20, 24; Atlantic Cas. Ins. Co. v. Interstate Ins. Co., 28 N.J.Super. 81, 100 A.2d 192, 198; and Reed v. Reed, 215 Or. 91, 332 P.2d 1049, 1052; or one or more, Wenthe v. Hospital Service, Incorporated of Iowa, 251 Iowa 765, 100 N.W.2d 903, 905. Necessarily it gives to the language employed a broad and comprehensive grasp. Having in mind the dictionary meaning of the word "employer," it is our view that the words "any employer" can scarcely be taken to mean other than anyone who employs personnel for pay. To give the provision the meaning for which plaintiff contends would, in effect, require us to insert after the words "any employer" the limiting words "of the named employee." We are not free to take such liberty with the sufficiently expressed terms agreed upon by the insurer and the insured.

Judgment affirmed.